UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARKISHA PATRICE WHITE,

Plaintiff,

v.

ORANGE URGENT CARE, PLLC; PATRICIA
SIRCABLE; *and* MARELIN CORDERO,

Defendants.

No. 24-CV-6827 (KMK)

OPINION & ORDER

Appearances:

Markisha P. White
Middletown, NY
*Pro se Plaintiff*

Harina M. Maragh, Esq.
Kenneth A. Novikoff
Rivkin Radler LLP
Uniondale, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Markisha White ("Plaintiff"), proceeding pro se, brings this Action against Orange

Urgent Care, PLLC ("OUC"), Patricia Sircable ("Sircable"), and Marelin Cordero ("Cordero")

(collectively "Defendants"), alleging racial discrimination in violation of 42 U.S.C. § 1981

("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq ("Title

VII").[1]  Before the Court is Defendants' Motion to Dismiss (the "Motion").  (*See* Notice of Mot.

(Dkt. No. 28).)  For the reasons set forth below, Defendants' Motion is granted.

---

[1] While Plaintiff states that "[t]his [A]ction arises under 42 U.S.C. § 1981 and Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for racial discrimination in
employment[,]" (Am. Compl. ("FAC") 1 (Dkt. No. 25)), she also seeks compensation "for

I.  Background

A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'" *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on [a] Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (citation and quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

---

emotional distress under . . . Title VII and the ADA[,]" (*id.* ¶ 16.)  However, because Plaintiff's allegations are couched in terms of racial discrimination, the Americans with Disabilities Act, commonly referred to as the "ADA," is inapplicable. *See Xue v. Columbia Univ.*, No. 23-CV-7502, 2023 WL 6611060, at *2 (S.D.N.Y. Oct. 10, 2023) ("The Americans with Disabilities Act of 1990 prohibits discrimination on the basis of an individual's disability."  (citing 42 U.S.C. § 12112(a)).  Accordingly, the Court will evaluate Plaintiff's claims under Section 1981 and Title VII.

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[the plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

Because Plaintiff is proceeding pro se, the Court will consider the exhibit attached to her Amended Complaint and briefing. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (considering exhibits attached to pro se complaint when deciding motion to dismiss); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum).

B.  Factual Background

The following facts are drawn from Plaintiff's First Amended Complaint and appended exhibit and are assumed to be true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is "an African American woman," and "was employed by [OUC] from October 2021 through November 2021."  (FAC ¶ 1.)  Plaintiff worked as a medical assistant and was hired by Sircable, who was her supervisor.  (*Id.* ¶¶ 1, 5.)  Cordero was one of Plaintiff's coworkers.  (*Id.* ¶ 3.)  During her time at OUC, Plaintiff experienced several interactions which form the basis of her First Amended Complaint.  They are as follows:

On October 14, 2021, non-party coworker Charles Jablonski ("Jablonski"), a Caucasian man, asked Plaintiff:  "Did you take a break?  Make sure you take one.  This is not a factory— you can take breaks."  (*Id.* ¶ 2.)

On November 2, 2021, Plaintiff "was assigned to a room of five African American patients alone," despite assurances that Cordero would assist her.  (*Id.* ¶ 3.)  However, Cordero failed to assist Plaintiff, "exacerbating Plaintiff's workload."  (*Id.*)  When non-party coworker Dr. Bruce Suditu ("Suditu") entered the room, he remarked "[y]ou're not done yet?" to Plaintiff.  (*Id.* ¶ 4.)  When Plaintiff explained that she was "documenting five charts simultaneously," Suditu responded by questioning why the charts were not yet open.  (*Id.*)  Cordero then told Plaintiff she  "look[ed] like [she] d[idn't] want to be here" said Plaintiff could "leave if [she] d[idn't] want to be here."  (*Id.*)  After the interaction, Plaintiff suffered a "severe panic attack, forcing [her] to leave her work shift early."  (*Id.* ¶ 5.)  Plaintiff "suffered physical distress" including "heart palpitations, hyperventilating, and crying" while trying to report the incident to Sircable, who did not respond.  (*Id.*)

On November 3, 2021, Plaintiff came to work "with a new braided hairstyle," to which Jablonski remarked to another non-party coworker, Kelly Matthews ("Matthews"), "'You got your head did,' while mimicking stereotypical speech patterns associated with Black women."  (*Id.* ¶ 8.)

4

On November 4, 2021, non-party coworker Dr. Bruno ("Bruno") accused Plaintiff of mishandling patient paperwork that had gone missing.  (*Id.* ¶ 9.)  Bruno then remarked to Matthews, who had made a general accusation of someone stealing her Snapple drink, "[m]aybe it was the person who did this [missing] patient chart[,]" knowing Plaintiff was the one who had been assisting that patient.   (*Id.*)

In addition to these discrete incidents, Plaintiff alleges that she experienced disparities in working conditions because of her race, claiming that she was assigned to work on the COVID-19 isolation floor alone, without adequate support.  (*Id.* ¶ 10.)  While working on the COVID-19 isolation floor, Plaintiff "was required to request breaks in advance and wait indefinitely for relief" but "[n]on-Black medical assistants were permitted to take breaks at scheduled times . . . ."  (*Id.*)  Plaintiff claims her assignment to the COVID-19 isolation floor and inability to take breaks at-will "subjected [her] to prolonged COVID-19 exposure," (*id.* ¶ 11), and she "contracted COVID-19 for the first time due to these conditions," (*id.* ¶ 12).

Lastly, Plaintiff alleges that on November 29, 2021, she and Cordero met with Sircable "regard[ing] . . . the ongoing harassment orchestrated by" Cordero.  (*Id.* ¶ 13.)  After the meeting, Cordero allegedly posted a flyer with "a racially offensive symbol" in their workplace. (*Id.*)



(Pl.'s Ex. A.)  According to Plaintiff, the flyer depicts stick figures with "the black one showing

a representation of anger[.]"  (FAC ¶ 13.)  Plaintiff saw the flyer as a "personal attack" and

interpreted it as her being depicted "as the 'angry black person[,]' [a] derogatory racial

stereotype of [a] Black African [w]oman being labeled as hypersensitive when speaking up in the

workplace[.]"  (*Id.*)  Although Plaintiff lodged "complaints" with Human Resources, they "did

not investigate the matter in accordance with UOC policy."  (*Id.* ¶ 14.)

"[D]ue to the ongoing hostile work environment, including the display of a racially

offensive symbol[,]" Plaintiff "was forced to resign from her [m]edical [a]ssistant position" at

OUC on November 29, 2021.  (*Id.* ¶ 13.)

C. Procedural Background

Plaintiff initiated this Action by filing her original Complaint on September 6, 2024. (*See* Compl. (Dkt. No. 1).) On September 24, 2024, Plaintiff's request to proceed in forma pauperis was granted. (*See* Order (Dkt. No. 6).) On December 5, 2024, this Court entered an Order of Service directing the U.S. Marshals to serve Defendants, (*see* Order (Dkt. No. 8)), and entered a mediation referral order, (*see* Order (Dkt. No. 9)). Sircable was served on February 7, 2025, (*see* Statement of Serv. (Dkt. No. 14)), and OUC and Cordero waived service on February 14, 2025, (*see* Statement of Serv. (Dkt. No. 16); Statement of Serv. (Dkt. No. 17)).

On April 15, 2025, Plaintiff requested leave to file an amended complaint. (*See* Letter from Plaintiff to Court (Apr. 15, 2025) (Dkt. No. 23).) On May 27, 2025, the Court granted Plaintiff's request, (*see* Order (Dkt. No. 24)), and Plaintiff filed her First Amended Complaint on May 28, 2025, (*see* FAC).

On June 19, 2025, Defendants requested leave to file the instant Motion, (*see* Letter from Harini Maragh, Esq. to Court (June 19, 2025) (Dkt. No. 26)), which the Court granted on June 20, 2025, (*see* Order (Dkt. No. 27)).

Defendants filed their Motion to Dismiss on July 18, 2025. (*See* Notice of Mot.; Decl. of Kenneth A. Novikoff in Supp. of Mot. ("Novikoff Decl.") (Dkt. No. 29); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 30).) On August 17, 2025, Plaintiff filed her Opposition. (*See* Decl. of Markisha White in Opp. (Dkt. No. 31); Pl.'s Mem. of Law in Opp. ("Pl.'s Opp.") (Dkt. No. 32).) On September 2, 2025, Defendants filed their Reply. (*See* Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 33).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations adopted) (citation and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged their claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.”).

In considering a motion to dismiss, the Court “must accept as true all of the factual allegations contained in the complaint.” *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (“In addressing the sufficiency of a complaint we accept as true all factual allegations . . . .” (quotation marks omitted)). Further, “[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff.” *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie’s Int’l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the “complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s].” *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, “the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with [the] relevant rules of procedural and substantive law.” *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) (“[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.” (italics omitted) (quoting *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995)).

Generally, “[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.” *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted).

B.  Analysis

Plaintiff cites Title VII and Section 1981 as the source of her claims.  (*See* FAC.)  The Court interprets her First Amended Complaint as asserting hostile work environment and constructive discharge claims under Title VII and Section 1981.  (*See id.* ¶¶ 13, 16; Pl.'s Opp. 3, 6.)[2]

Before delving into the substance of Plaintiff's claims, the Court must dismiss Plaintiff's Title VII claims against Cordero and Sircable because Title VII does not provide for individual liability.[3]  *See Chamberlin v. Splashlight, LLC*, No. 23-CV-6318, 2024 WL 5170266, at *5 (S.D.N.Y. 2024) ("Under Title VII, only an employer and not individuals can be liable." (citation omitted)); *Williams v. N.Y.C Dep't of Educ.*, No. 17-CV-1996, 2018 WL 4735713, at *4 (S.D.N.Y. Sept. 29, 2018) ("In [the Second Circuit], it is long settled that individual defendants may not be subject to liability under Title VII."); *accord Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (affirming the lower court's dismissal of plaintiff's Title VII claims against the individual defendants because "individuals are not subject to liability under Title

---

[2] In her Opposition to the instant Motion, Plaintiff asserts a retaliation claim for the first time.  (*Contrast* FAC *with* Pl.'s Opp. 5.)  However, "[t]he Court [will] not address this claim . . . because '[e]ven a plaintiff proceeding pro se may not raise entirely new causes of action for the first time in [her] opposition papers.'"  *Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-CV-2928, 2024 WL 3718675, at *1 n.2 (E.D.N.Y. Aug. 8, 2024) (alterations in original) (quoting *Herrera v. Navient Corps.*, No. 19-CV-6583, 2020 WL 360507, at *5 (E.D.N.Y. July 13, 2020)); *see also Psychic Readers Network, Inc. v. A&E Television Network, LLC*, No. 24-CV-8155, 2025 WL 2532292, at *3 n.4 (S.D.N.Y. Sept. 3, 2025) (same).

[3] While Plaintiff does not contest Defendants' request to dismiss her Title VII claims against Cordero and Sircable, the Court notes that Plaintiff expresses her wish to preserve her right to plead New York State Human Rights Law claims against Cordero and Sircable in a future amended complaint.  (*See* Pl.'s Opp. 5.)

VII." (quoting *Wrighten v. Glowski*, 232 F.3d 199, 120 (2d Cir. 2000) (per curiam)).

Accordingly, Plaintiff's Title VII claims can only be asserted against OUC, her former employer.

### 1.  Hostile Work Environment

Title VII and Section 1981 prohibit employers from subjecting employees to a hostile

work environment.  *See Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015)

(explaining that "[t]he phrase terms, conditions, or privileges of employment [in Title VII]

evinces a congressional intent to strike at the entire spectrum of disparate treatment, which

includes requiring people to work in a discriminatorily hostile or abusive environment"

(alteration adopted) (quoting *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012)));

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("Section 1981

provides a cause of action for race-based employment discrimination based on a hostile work

environment.").  The same standard is used, regardless of whether a hostile work environment

claim is brought under Section 1981 or Title VII.  *See Banks v. Gen. Motors, LLC*, 81 F.4th 242,

261–62 (2d Cir. 2023) ("Hostile work environment claims brought under Title VII [and]

[Section] 1981 . . . are assessed using the same standard." (collecting cases); *Maxius v. Mount

Sinai Health Sys., Inc.*, No. 21-CV-10422, 2024 WL 4166157, at *4 (S.D.N.Y. Sept. 12, 2024)

("Hostile work environment claims under [Section] 1981 and Title VII are governed by the same

standard." (citation omitted)).

To state a hostile work environment claim, a "plaintiff must allege facts that show the

challenged conduct '(1) is objectively severe or pervasive—that is, creates an environment that a

reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff

subjectively perceives as hostile or abusive; and (3) creates such an environment because of the

plaintiff's race.'"  *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 191 (S.D.N.Y. 2024)

(quoting *Sykes v. Rachmuth*, No. 22-CV-3989, 2023 WL 275865, at *7 (S.D.N.Y. Mar. 31, 2023)); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (same); *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (same).  Here, Plaintiff has made clear that she perceived the challenged conduct as creating a hostile work environment, (*see* FAC ¶ 13 (describing the challenged conduct as creating an "ongoing hostile work environment")), so only the first and third requirements are at issue, (*see generally* Defs.' Mem.).

At the motion to dismiss stage, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *Patane*, 508 F.3d at 113 (alteration adopted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)); *see also Gonzalez v. City of New York*, No. 15-CV-3158, 2015 WL 9450599, at *4 (E.D.N.Y. Dec. 22, 2015) (same).  "[A] work environment's hostility should be assessed based on the totality of the circumstances."  *Id.* at 113 (citation and quotation marks omitted); *see also Humphries v. City Univ. of N.Y.*, No. 13-CV-2641, 2013 WL 6196561, at *10 (S.D.N.Y. Nov. 26, 2013) (same).  Relevant circumstances include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."  *Humphries*, 2013 WL 6196561, at *10 (citation omitted); *see also Rivera*, 743 F.3d at 20 (same).  The Second Circuit "treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis."  *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009).  "Core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters blatant racial

epithets on a regular if not constant basis and behaves in a physically threatening manner." *Id.* (citation and quotation marks omitted). "[W]hether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry," and the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss. *Patane*, 508 F.3d at 113–14 (citation and quotation marks omitted); *see also Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474, 2021 WL 1163797, at *9 (S.D.N.Y. Mar. 25, 2021) (same); *Rubert v. King*, No. 19-CV-2781, 2020 WL 5751513, at *9 (S.D.N.Y. Sept. 25, 2020) (same); *Humphries*, 2013 WL 6196561, at *10 (same).

In general, the alleged incidents of harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Alfano*, 294 F.3d at 374). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Keaton v. Conn. Dep't of Rehab. Servs.*, No. 16-CV-1810, 2018 WL 1245728, at *10 (D. Conn. Mar. 9, 2018) (quoting *Alfano*, 294 F.3d at 374). However, "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano*, 294 F.3d at 374; *see also Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 561 (S.D.N.Y. 2022) (same); *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010, at *2 (2d Cir. Apr. 18, 2022) (summary order) ("And while a plaintiff must usually show 'more than a few isolated incidents of racial enmity,' we have recognized the caveat that 'a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe.'" (quoting *Fincher v. Depository Tr. & Cleaning Grp.*, 603 F.3d 712, 724 (2d Cir. 2010)).

Defendants argue Plaintiff has not alleged conduct that is objectively severe or pervasive enough to meet the first requirement of hostile workplace claim. (*See* Defs.' Mem. 8–9.)

"While there is no magic number of allegations that will meet the threshold for sufficiently severe and pervasive conduct to support a claim for a hostile work environment, the [Second] Circuit has found that claims that are 'few in number and occurred over a short period of time' were insufficient" to support a hostile work environment claim. *Shim-Larkin v. City of New York*, No. 16-CV-6099, 2023 WL 6519581, at *8 (S.D.N.Y. Aug. 18, 2023) (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987), *report and recommendation adopted by* 2023 WL 6236368 (S.D.N.Y. Sept. 26, 2023).

Plaintiff worked at OUC from "October 2021 through November 2021." (FAC ¶ 1). In her First Amended Complaint, Plaintiff details five discrete, allegedly racially charged interactions that occurred on five different days over a span of approximately six weeks. (*See id.* ¶¶ 2–4, 8–9, 13 (identifying conduct that occurred on October 14, November 2, November 3, November 4, and November 29, 2021).) She also complains of two incidents of disparate treatment in terms of workload and working conditions, one of which occurred on November 2, 2021, (*id.* ¶ 3), and the other of which occurred over an unspecified period of time, (*id.* ¶¶ 10–11 (alleging that "Plaintiff, the sole African American medical assistant, was uniquely assigned to work alone on the COVID-19 isolation floor . . . without adequate staffing support.")).

First, with the exception of the comment about her new hairstyle, (*id.* ¶ 8), and the flyer displaying a "racially offensive symbol[,]" (*id.* ¶ 13), the conduct Plaintiff complains of is facially race neutral, and Plaintiff has not alleged "some circumstantial or other basis for inferring that [these] incidents [race]-neutral on their face were in fact discriminatory[,]" *Alvarado*, 631 F. Supp. 3d 89, 91 (S.D.N.Y. 2022) (citation omitted). "Although Plaintiff may use incidents that are facially race-neutral" in pleading a hostile work environment claim, "she must demonstrate the basis from which a reasonable fact finder could infer that those neutral

14

incidents were in fact racially motivated." *Adams-Martin v. Conn. Dep't. Dev. Servs.*, No. 10-CV-99, 2012 WL 878306, at *18 (D. Conn. Mar. 14, 2012) (citation omitted).  While the Second Circuit has cautioned against setting the bar too high at the motion to dismiss stage, *see, e.g.*, *Patane*, 508 F.3d at 113–14, it has also noted that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important that hostile work environment cases exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.

*Alfano*, 294 F.3d at 377.

Here, Plaintiff does not assert any basis for concluding that Bruno's comments on November 4, 2021, in which he "accused . . . Plaintiff of mishandling patient paperwork" and implicitly suggested that she had been the one to take Williams' Snapple drink, were related to her race.  (FAC ¶ 9.)  *See Littlejohn* 795 F.3d at 321 (allegations of wrongful reprimands were insufficient to establish a hostile work environment); *Maron*, 605 F. Supp. 3d at 566 ("[H]arsh criticism, even that [the [p]laintiff alleges was unwarranted, does not itself make out a claim for hostile work environment."); *Abalola v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 20-CV-6199, 2022 WL 973861, at *12 (S.D.N.Y. Mar. 30, 2022) ("[R]eprimands [and] criticism . . . are insufficient to establish a hostile work environment.").  Further, although Plaintiff alleges that Jablonski's October 14, 2021, comment, in which he told her "[t]his is not a factory—you can take breaks[,]" "reflects discriminatory animus" when viewed in the context of Plaintiff being "the sole African American employee" at OUC, (*id.* ¶ 2), she offers no factual support from which to infer that the comment was motivated by racial animus, *see Downing v. Yadav*, No. 24-CV-4739, 2026 WL 734180, at *9 (E.D.N.Y. Mar. 16, 2026) (finding that "[i]n absence of indica that tie this [facially race-neutral] remark to [the] plaintiff's race, [the] plaintiff has failed to plausibly allege that this

15

statement supports an inference of racial discrimination" and "find[ing] that [the] plaintiff has failed to plead a Title VII hostile work environment claim because all of the specific conduct [the] plaintiff complains of is neutral on its face and [the] plaintiff has not sufficiently connected this conduct with her race or sex"); *Dingle v. City of New York*, No. 24-CV-4026, 2026 WL 370081, at *4 (Feb. 10, 2026) (finding statements "not explicitly connect[ed] . . . to [the plaintiff's race] . . . cannot form the basis of a hostile work environment claim"); *Merritt v. Workers' Comp. Comm.*, No. 24-CV-798, 2025 WL 3097104, at *7 (D. Conn. Nov. 6, 2025) (dismissing the plaintiff's race-based hostile work environment claim in part because "there is no basis for a conclusion that there is a nexus between this [allegedly discriminatory, facially neutral] remark and the plaintiff's race"), *appeal pending*, No. 25-CV-2917 (2d Cir. Nov. 14, 2025)).

Similarly, in describing the events of November 2, 2021, in which Plaintiff was assigned to a room with five patients and Cordero "failed to provide support" despite previous assurances that she would assist, (*id.* ¶ 3), Suditu made remarks about Plaintiff not being done with her work, despite her "documenting five charts simultaneously," (*id.* ¶ 4), and Cordero telling Plaintiff she "look[ed] like [she] d[idn't] want to be here" and could "leave if [she] d[idn't] want to be here," (*id.*), Plaintiff provides no factual support for alleging the conduct "suggests racial animus" beyond her conclusory statement that the events "contrast[] with non-Black employee's experiences," (*id.* ¶ 4). Without a factual basis to link these facially neutral incidents to racial discrimination, the Court cannot credit these incidents as contributing to a hostile work environment based on Plaintiff's race. *See Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *17 (S.D.N.Y. Sept. 23, 2024) ("Indeed, 'without sufficient facts, even the most sincerely held beliefs of discrimination do not compromise a sufficient basis for withstanding a

16

12(b)(6) attack.'" (alteration adopted) (quoting *Williams v. Wellness Med. Care*, No. 11-CV-5556, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013)); *Petrisch v. HSBC Bank USA, Inc.*, No. 07-CV-3303, 2013 WL 1316712, at *14 (E.D.N.Y. Mar. 28, 2013) ("[I]t is well established that [a] plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination.'" (quoting *Lee v. Sony BMG Music Entm't, Inc.*, No. 07-CV-6733, 2010 WL 743948, at *9 (S.D.N.Y. Mar. 3, 2010)).

Although not addressed by Defendants, Plaintiff's allegations of disproportionate workload and less favorable working conditions are similarly disconnected from any factual support of racial animus.  While allegations of a disproportionate workload can support a hostile work environment claim, *see, e.g.*, *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-695, 2024 WL 4277940, at *13 (S.D.N.Y. Sept. 23, 2024), "[g]eneral assertions that [the] [p]laintiff was subjected to different treatment than her white or non-[B]lack colleagues, without more, [are] insufficient[,]" *McKinney v. New York*, No. 19-CV-3920, 2022 WL 602970, at *3 (S.D.N.Y. Mar. 1, 2022) (citation omitted); *see also Pagan v. County of Duchess*, No. 18-CV-6591578, 2018 WL 6591578, at *5 (S.D.N.Y. Dec. 14, 2018) (dismissing the plaintiff's disparate treatment claim because "[the] plaintiff identifies himself as the only Hispanic employee in the department and makes bald allegations that he was subjected to treatment and work assignments his white coworkers were not" but "fails to allege any facts about these employees' identities, experience levels, or conduct"); *Whittle v. County of Sullivan*, No. 16-CV-725, 2017 WL 5197154, at *7 (S.D.N.Y. Nov. 8, 2017) (noting that in raising an inference of discrimination, "[i]dentification of a 'generic class of white . . . employees' that allegedly received better treatment[] is 'insufficient even at the pleadings stage.'" (quoting *Goodine v. Suffolk Cnty. Water Auth.*, No. 14-CV-4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017) (alteration

17

omitted)).  Plaintiff's allegations are similar to those of the *McKinney* plaintiff, who "ma[de]

general allegations about the ways in which white and non-[B]lack officers [were] treated

differently than [B]lack officers but d[id] not plead facts to show that she was treated differently

than any similarly situated white or non-black employee."  *Id.* at *3.  The *McKinney* court

concluded that the plaintiff "ha[d] not sufficiently raised an inference of discrimination" because

she had "not allege[d] any facts about the other officers' identities, their experience levels, their

conduct[], or their job descriptions" that would allow the court to infer that the plaintiff was

treated worse than a similarly situated non-Black employee because of her race.  *Id.*  Here,

Plaintiff does not allege any facts about her coworkers' identities, experience levels, conduct, or

job descriptions that could support an inference that she was treated worse than non-Black

medical assistants.  Without pleading facts to show that similarly situated, non-Black employees

were treated differently than her, Plaintiff has not raised an inference of discrimination with her

allegations of disproportionate workload and working conditions.  *See Budhan v. Brightworks*

*Sustainability LLC*, No. 24-CV-5104, 2025 WL 919926, at *5 (S.D.N.Y. Mar. 26, 2025)

("[A]lthough the [c]omplaint alleges in generic and conclusory terms that [the plaintiff] was

treated differently from 'non-Black materials analysts' and other 'non-Black employees,' it does

not offer any specific and does not identify any ostensible comparator."); *Thompson v.*

*Shutterstock, Inc.*, No. 23-CV-4155, 2024 WL 2943813, at *22 (S.D.N.Y. June 10, 2024)

(finding the plaintiff's disproportionate workload allegations could not support a discrimination

claim under NYCHRL because the plaintiff "does not claim that similarly situated, non-Black

employees received a less onerous workload" than him)); *Finnigan v. Mattituck-Cutchogue*

*Union Free Sch. Dist.*, No. 20-CV-2837, 2022 WL 1205426, at *6 (E.D.N.Y. Feb. 28, 2022)

(dismissing the plaintiff's claims based on heavier workload because "[t]he complaint simply

18

offers conclusory statements that [the] [p]laintiff had to do more work than her counterparts . . . without identifying who the alleged comparators are [or] how they are similarly situated"), *report and recommendation adopted by*, 2022 WL 1205029 (E.D.N.Y. Apr. 22, 2022).

Additionally, although two of the incidents Plaintiff complains of are plausibly race-based, they are not sufficiently severe or pervasive enough to support a race-based hostile work environment claim.  First, Plaintiff alleges that on November 3, 2021, Jablonski commented on Plaintiff's new braided hairstyle to Williams, "mimicking stereotypical speech patterns associated with Black women."  (FAC ¶ 8.)  Despite Defendants' assertions to the contrary, (*see* Defs.' Mem. 6), other courts, including at least two in this District, "have acknowledged the potentially discriminatory intent behind comments regarding Black hair[,]" *Gurley v. David H. Berg & Assocs.*, No. 20-CV-9998, 2022 WL 309442, at *4 (S.D.N.Y. Feb. 2, 2022) (citation omitted); *Snowden v. Southerton*, No. 22-CV-514, 2023 WL 3601654, at *9 (S.D.N.Y. May 23, 2023) (crediting allegations that the defendant made derogatory comments about the plaintiff's hair as giving rise to a plausible inference of discrimination), and others have found that repeated mimicking or mockery of a plaintiff's accent are sufficiently related to a plaintiff's race or national origin to support a hostile work environment claim, *see, e.g.*, *Rodriguez v. N.Y.C. Dep't of Educ.*, No. 21-CV-3561, 2022 WL 4484576, at *12 (S.D.N.Y. Sept. 26, 2022) (finding the plaintiff's allegations of repeated mockery of employees' foreign accents to "constitute 'more than a mere scintilla of evidence' that [the] [p]laintiff was subject to continuous ridicule on account of her race or national origin." (quoting *Ochoa v. N.Y.C. Dep't of Educ.*, No. 20-CV-9014, 2022 WL 3646208, at *1 (S.D.N.Y. Aug. 24, 2022)); *Matthew v. JPMorgan Chase Bank, N.A.*, No. 17-CV-3594, 2020 WL 2523064, at *5 (E.D.N.Y. May 18, 2020) ("Several district courts in this Circuit have held that evidence of frequent accent mimicking or mockery can

19

support a claim of national origin discrimination." (collecting cases)).[4]  However, Plaintiff offers

no specific allegation about how Jablonski was mimicking the speech patterns associated with

Black women.  This undercuts the viability of this single incident as being sufficient to establish

conduct that is severe enough to support a hostile work environment claim.  *See Binns-Harty-*

*Bolt*, 2024 WL 3362409, at *7 (noting that a hostile work environment claim based on

allegations that coworkers made derogatory comments about the plaintiff's Jamaican accent

"would fail because" they were "too conclusory" and "too mild").

Similarly wanting is Plaintiff's claim about the flyer displaying an allegedly "racially

offensive symbol . . . ."  (FAC ¶ 13.)  While courts have found that "[o]ffensive images can

contribute to a hostile work environment," *Thompson*, 2024 WL 2943813, at *11; *see also*

*Banks*, 81 F.4th at 264–65 (finding that offensive images such as nooses and Confederate flags

contributed to a hostile work environment), there is nothing patently or even plausibly offensive

about the flyer in question.  As noted by Defendants, the flyer was, in fact, an invitation

(apparently to all employees) to a potluck dinner at Cordero's residence.  (*See* Defs. Mem. 7–8;

---

[4] There are, however, a plethora of cases that have found non-specific allegations about the mockery of a plaintiff's accent insufficient to support a hostile work environment claim.  *See, e.g., Binns-Harty-Bolt v. McDonough*, No. 24-CV-7276, 2024 WL 3362409, at *7 (S.D.N.Y. June 21, 2024) (dismissing hostile work environment claim based on allegations that coworkers made comments about the plaintiff's Jamaican accent, because the allegations did not identify what the coworkers "actually said" to "ridicule" the plaintiff); *Richard v. N.Y.C. Dep't of Educ.,* 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017) ("Standing alone, the comments regarding [the] [p]laintiff's accent and the isolated comment referring to another black DOE employee are not sufficient to state a hostile work environment claim."); *Thior v. JetBlue Airways, Inc.,* 2016 WL 5092567, at *2 (E.D.N.Y. Sept. 19, 2016) (holding that allegations that the plaintiff's supervisor mocked his accent and unfairly failed him on a test were insufficient to state a claim for hostile work environment); *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 547 (W.D.N.Y. 2016) (finding that allegations that the plaintiff's coworker "made fun of her accent" were insufficient to state a hostile work environment claim because they were "general and unaccompanied by supporting facts, such as when and in what context this conduct occurred.").

Pl.'s Ex. A.)  The top part of the invitation provides the details of the event, such as the time and location.  (Pl.'s Ex. A.)  The bottom part has four stick figures.  (*Id.*)  Two are red, one is blue, and one is black.  (*Id.*)  While the black stick figure is the only one with eyebrows drawn on top of its eyes, it has the same smiley face as the other stick figures.  (*Id.*)  Presumably because the eyebrows are pointed down, Plaintiff alleges that the black stick figure exhibits "anger."  (FAC ¶ 13.)  Putting aside the fact that the black stick figure, like the red and blue stick figures, is smiling (projecting something contrary to anger), it strains credulity to read the invitation as an act of race-based hostility to anybody, let alone Plaintiff, or to find it severe enough to qualify as creating a hostile work environment.

However, even if Plaintiff could establish that these actions by her coworkers were race-based, the Second Circuit has repeatedly held that "[i]solated, minor acts or occasional episodes" do not amount to a hostile work environment.  *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (citation omitted); *see also Dingle*, 2026 WL 370081, at *4 (explaining that to state a hostile work environment claim, "plaintiffs generally must allege 'more than a few isolated incidents of racial enmity.'" (quoting *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986)); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) ("Isolated incidents . . . will not suffice to establish a hostile work environment unless they are extraordinarily severe."); *La Grande v. Descente Distrib. Inc.*, 370 F. App'x. 206, 210 (2d Cir. 2010) (summary order) ("Ordinarily, a race-based hostile work environment claim must involve 'more than a few isolated incidents of racial enmity.'" (quoting *Williams v. County of Westchester*, 171 F.3d 98, 100–01 (2d Cir. 1999)).  These two incidents, even considered together, are the type of mild or isolated incidents of harassment that are insufficient to create a hostile work environment.  *See Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 624 (E.D.N.Y. 2020) ("The

21

only alleged instance of direct mocking occurred on January 6, 2017.  No reasonable juror could find that Dr. Rigg's comments were continuous and concerted or constituted a steady barrage of opprobrious comments." (citation and quotation marks omitted)), *aff'd* 2021 WL 4097316 (2d Cir. 2021); *McCray v. Project Renewal, Inc.*, No. 15-CV-8494, 2017 WL 715010, at *4 (S.D.N.Y. Feb. 22, 2017) ("Moreover, the two racial slurs [the plaintiff] alleges, while unacceptable, do not plausibly allege a hostile work environment." (citation omitted); *Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 348 (W.D.N.Y. 2012) ("Even if the court were to find these two incidents to be evidence of a racially-based hostile work environment, these two isolated incidents are insufficient to establish a prima facie case." (emphasis omitted)). Accordingly, Plaintiff's First Amended Complaint fails to state a hostile work environment claim under Title VII or Section 1981.

### 2.  Constructive Discharge

Constructive discharge claims "'are difficult to establish,' and 'are routinely rejected by the courts.'"  *Tassy v. Buttigieg*, No. 21-CV-577, 2023 WL 144112, at *6 (E.D.N.Y. Jan. 10, 2023) (quoting *Wright v. Goldman, Sachs & Co.*, 387 F. Supp. 2d 314, 325 (S.D.N.Y. 2005)), *aff'd*, No. 23-162, 2024 WL 20647 (2d Cir. Jan. 2, 2024).  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  *Terry*, 336 F.3d at 151–52 (citations omitted).  "This standard is 'higher than the standard for establishing a hostile work environment[,]'" *Rys v. Davis*, No. 22-CV-10758, 2025 WL 896844, at *11 (S.D.N.Y. Mar. 24, 2025) (quoting *Dixon v. City of New York*, No. 23-CV-8941, 2025 WL 50140, at *10 (S.D.N.Y. Jan. 7, 2025)), "so [c]ourts have found that, where a hostile work environment claim fails, the related constructive discharge claim must also fail[,]" *id.* (collecting cases).  Accordingly,

22

because Plaintiff has failed to state a hostile work environmental claim, her constructive discharge claim also fails. *See E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 875 (S.D.N.Y. 2013) (dismissing the plaintiff's claim of constructive discharge because she failed to establish a hostile work environment claim on the same facts); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) ("Because [the plaintiff] failed to establish a hostile work environment, her claim of constructive discharge also fails.").

### III.  Conclusion

For the reasons set forth above, Defendants' Motion is granted, and Plaintiff's First Amended Complaint is dismissed.  Because this dismissal is the first adjudication of the merits of Plaintiff's claims, it is without prejudice.  Should Plaintiff choose to file an amended complaint, she must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain all of the claims and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, the case could be dismissed with prejudice.  The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 28.

SO ORDERED.

Dated:   March 30, 2026
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

23